UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ISABEL M. RODZIK,<br><br>        Plaintiff,<br><br>v.<br><br>LIBERTY BAY RECOVERY CENTER, LLC,<br>GRANITE RECOVERY HOLDINGS, LLC,<br>and<br>BAYMARK HEALTH SERVICES, INC.,<br><br>        Defendants. | **COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Isabel M. Rodzik submits this Complaint against Defendants BayMark Health Services, Inc., Granite Recovery Holdings, LLC, and Liberty Bay Recovery Center, LLC for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA") and the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq*. ("MHRA"). Plaintiff hereby complains against Defendants as follows.

**PRELIMINARY STATEMENT**

1. This action under the ADA and MHRA arises out of Defendants' unlawful discrimination and termination of Plaintiff Isabel M. Rodzik ("**Ms. Rodzik**"). In the simplest terms, Defendants unlawfully discriminated against Ms. Rodzik by terminating her employment only *days* after Ms. Rodzik sought to engage in an interactive process with Defendants concerning a reasonable accommodation for her disability. Defendants received notice of Ms. Rodzik's accommodation request and provided her the necessary forms to complete in response

1

to her accommodation request, but then unlawfully terminated her without cause during the time in which she was required to complete and return the necessary forms provided to her by Defendants. Defendants short-changed the process established by law for employers to receive and review accommodation requests from individuals like Ms. Rodzik, who suffer from a debilitating physical disability. Rather than review and consider Ms. Rodzik's accommodation request, Defendants swiftly terminated her employment altogether.

2. Accordingly, and for the reasons set forth more fully below, Ms. Rodzik brings forth claims against Defendants for violations of the ADA and MHRA.

**PARTIES**

3. Plaintiff Isabel M. Rodzik is an individual who resides in South Portland, Maine.

4. Ms. Rodzik suffers from postural orthostatic tachycardia syndrome ("POTS"), which is a form of dysautonomia that impairs her physical and mental health. POTS is a condition that causes a number of symptoms, including, among other things, periods of rapid heart rate, dizziness, fatigue, chest pain, blurred vision, shortness of breath, and headache.

5. Defendant Liberty Bay Recovery Center, LLC ("**Liberty Bay**") is a limited liability company incorporated under the laws of the State of Maine. At all times relevant to this Complaint, Liberty Bay was the operator of a residential treatment facility in Portland, Maine, that provided medical, counseling, and support services to individuals dealing with addiction.

6. Defendant Granite Recovery Holdings, LLC ("**Granite**") is a New Hampshire limited liability company. At all times relevant to this Complaint, Granite operated Liberty Bay.

7. Defendant BayMark Health Services, Inc. ("**BayMark**") is a Delaware corporation headquartered in Lewisville, Texas.

8. According to its website, BayMark is "North America's largest provider of medication-assisted treatment (MAT) for substance use disorders" and provides treatment to "tens of thousands of individuals" at treatment facilities across the United States.

9. At all times relevant to this Complaint, BayMark was the owner of both Liberty Bay and Granite.

10. Each Defendant, individually, had fifteen or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the discrimination occurred.

11. Defendant BayMark had 500 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the discrimination occurred

12. Throughout Ms. Rodzik's employment, BayMark, Granite, and Liberty Bay (collectively, Defendants) were an integrated enterprise and/or joint employer of Ms. Rodzik.

13. Ms. Rodzik was hired by BayMark to serve as the Executive Director at Liberty Bay; was given a Granite email address for use during her employment; was

3

directly supervised by Granite's CEO while she worked at Liberty Bay; consulted with and was advised by both Granite and BayMark in response to her request for an accommodation under BayMark's ADA policy; and, ultimately, was terminated outside of policy by Granite's Director of HR after consultation with the Granite CEO and multiple members of the BayMark's HR department and senior management.

14. Thus, Defendants maintained common management and interrelation between operations, and held centralized control over labor relations, including over Ms. Rodzik. Defendants likewise co-determined Ms. Rodzik's conditions of employment, including, but not limited to, sharing supervision of day-to-day activities; sharing the ultimate power over changes in Ms. Rodzik's compensation and benefits; sharing authority to promulgate work rules, conditions of employment, and work assignments relating to Ms. Rodzik; and, sharing decision-making authority to hire, discipline, or terminate Ms. Rodzik.

## JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over Ms. Rodzik's ADA claims pursuant to 28 U.S.C. § 1331.

16. This Court has supplemental jurisdiction over Ms. Rodzik's MHRA claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Ms. Rodzik's federal claims and derive from a common nucleus of operative facts as Ms. Rodzik's federal claims.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the unlawful and discriminatory practices giving rise to

the claims were committed within the jurisdiction of this District, in which Ms. Rodzik was employed and later terminated.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. On or about December 21, 2023, Ms. Rodzik filed with the Maine Human Rights Commission ("MHRC") a timely Complaint of Discrimination against Defendants alleging unlawful discrimination, which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). BayMark and Liberty Bay submitted a response to the Complaint on or about March 12, 2024.

19. On or about April 11, 2024, Ms. Rodzik filed with the MHRC a timely *Amended* Complaint of Discrimination against Defendants alleging unlawful discrimination, which again was cross-filed with the EEOC. Granite submitted a response to the Amended Complaint on or about June 24, 2024.

20. All administrative charges were administratively dismissed in December 2024.

21. Accordingly, Ms. Rodzik has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

### FACTUAL ALLEGATIONS

22. On or about January 3, 2023, Ms. Rodzik was hired by BayMark to be the Executive Director at Liberty Bay in Portland, Maine.

23. In her role as Executive Director, Ms. Rodzik held a variety of responsibilities, including, in part, overseeing treatment services provided at the center and managing its operations.

24. While employed in her role as Executive Director, Ms. Rodzik suffered from POTS.

25. As Executive Director at Liberty Bay, Ms. Rodzik reported directly to Granite CEO Erik Ekberg ("Mr. Ekberg"), who worked primarily in New Hampshire.

26. Mr. Ekberg was aware that Ms. Rodzik suffered from POTS and that she would occasionally be required to receive necessary infusions to treat her condition and associated flare-ups.

27. When Ms. Rodzik was required to receive infusions, Ms. Rodzik continued to communicate with her staff and supervisors, including by phone, email, and text, and, at certain times, even completed work while she received treatment at the hospital.

28. On or about March 16, 2023, Ms. Rodzik received a medical note from her health care provider, which note documented Ms. Rodzik's management of her "debilitating flare ups" as a result of her condition and indicated that it would be "medically necessary" for her to perform work remotely during those periods when she was "in a flare," in order to allow time for recovery.

29. On or about March 17, 2023, Ms. Rodzik provided the March 16 medical note to Shawn Gilpatrick ("Mr. Gilpatrick"), Granite's Director of Human Resources.

30. Liberty Bay did not have a Director of Human Resources position.

31. On March 20, 2023, Mr. Gilpatrick referred Ms. Rodzik to Kristi Richardson ("Ms. Richardson"), the Senior HR Manager for BayMark, and asked Ms.

Richardson to inform Ms. Rodzik about "what options she may have available," including potential options under the ADA.

32. Ms. Rodzik spoke by phone with Ms. Richardson on March 20, 2023.

33. Later that same day, Ms. Richardson emailed Ms. Rodzik and Mr. Gilpatrick, informing Ms. Rodzik that her medical note and request "will need to be reviewed under ADA."

34. As a result, Ms. Richardson provided to Ms. Rodzik numerous documents from BayMark, including, among other things, BayMark's ADA policy, a copy of Ms. Rodzik's job description, BayMark's medical inquiry form to be completed by Ms. Rodzik's health care provider, and BayMark's ADA questionnaire form to be completed by Ms. Rodzik.

35. BayMark's ADA policy requires that employees, like Ms. Rodzik, have fifteen days to return the forms provided.

36. Ms. Richardson informed Ms. Rodzik that the forms provided must be completed and returned no later than Tuesday, April 2, 2023.

37. At the time of Ms. Rodzik's request for an accommodation and of Granite and BayMark's response to the same, Ms. Rodzik had no documented disciplinary history and had not been made aware by Defendants of any job performance concerns under Defendants' internal discipline policy.

38. During this same time period, Ms. Rodzik was involved in a car accident, unrelated to her employment and accommodation request. Ms. Rodzik provided to Defendants a second medical note about the accident and a related concussion she

suffered. Following the car accident, Ms. Rodzik was scheduled to return to work on April 3, 2023, in accordance with the guidance and medical documentation provided by Ms. Rodzik's health care provider to Defendants.

39. On March 24, 2023, only four days after Ms. Rodzik's accommodation request, Mr. Ekberg emailed Mr. Gilpatrick, creating a list of prior performance concerns he allegedly had about Ms. Rodzik that dated back to the beginning of her employment. For instance, Mr. Ekberg documented in his email that Ms. Rodzik arrived to work late on one day because her car had a flat tire.

40. Mr. Ekberg's concerns in his March 24, 2023, email were never communicated to Ms. Rodzik and were never otherwise documented in her personnel file.

41. On that same day, upon information and belief, Mr. Gilpatrick emailed numerous individuals at Granite and BayMark about Mr. Ekberg's purported concerns and about Mr. Gilpatrick's concerns related to a probationary employment period.

42. In response, BayMark's HR Director, Meagan Geddes ("Ms. Geddes"), emailed Mr. Gilpatrick on March 24, informing him that Defendants "do not have any sort of probationary period for employment" and further requesting "any documentation or progressive discipline" related to Ms. Rodzik.

43. On March 27, 2023, Mr. Gilpatrick emailed Ms. Geddes, Mr. Ekberg, and others, including Tim Palus, Senior Vice President at Bay Mark ("Mr. Palus"), to request approval for Ms. Rodzik's termination, stating, among other things, that

Defendants understood there was a progressive discipline process, that Defendants did not at any time "work through" a performance improvement plan for Ms. Rodzik, and that a probationary period should be considered by Defendants to provide "the most cost effective" way of terminating employees "without needing to provide 'just cause.'"

44. The March 27 request for the approval of Ms. Rodzik's termination was, as documented by BayMark's HR Director Ms. Geddes, both "outside of policy" and not preceded by any form of progressive discipline.

45. As a result, Ms. Geddes sought additional approval for the requested termination on March 29, 2023, including for approval from Mr. Palus of BayMark.

46. Later that same day, Mr. Palus informed Mr. Ekberg, Mr. Gilpatrick, and Ms. Geddes that he approved the request to proceed with termination of Ms. Rodzik.

47. On March 31, 2023, at 4:29 pm, Ms. Geddes emailed Mr. Ekberg, Mr. Palus, and Mr. Gilpatrick, stating that the termination of Ms. Rodzik was "supported" and the purported basis for termination "would be not meeting performance and attendance expectations." At that time, Ms. Geddes likewise advised the individuals from Granite and BayMark that the "best practice moving forward" requires that there is "documentation when there is a conversation about poor performance or attendance."

48. In the evening of March 31, 2023—only eleven days after Ms. Rodzik's accommodation request and still three days before she was required to complete and

return the ADA forms provided by Defendants—Mr. Gilpatrick called Ms. Rodzik to inform her that she had been terminated by Defendants.

49. Defendants were aware of Ms. Rodzik's disability at the time of her termination.

50. Defendants were aware of their own internal ADA policy at the time of Ms. Rodzik's termination, and had even provided the policy to Ms. Rodzik as part of her accommodation request.

51. Defendants were aware of Ms. Rodzik's pending accommodation request at the time of her termination.

52. And, at the time of Ms. Rodzik's termination, Defendants were aware of their April 2, 2023, deadline for Ms. Rodzik to return the ADA forms to Defendants.

53. Defendants' termination of Ms. Rodzik was in violation of their own internal policies regarding employee discipline, including progressive discipline.

54. Defendants' termination of Ms. Rodzik was in violation of their own internal policies regarding the ADA and accommodation requests.

55. At no time prior to her termination was Ms. Rodzik ever informed by Defendants about concerns related to her job performance or ever disciplined by Defendants.

56. Defendants, individually and collectively, shared authority to consider Ms. Rodzik's accommodation request under the ADA and, ultimately, shared in the decision-making process regarding her unlawful termination.

57. Until the time of her termination, Ms. Rodzik remained able to perform the essential functions of the Executive Director position that she held, with or without a reasonable accommodation.

58. Following her termination, Ms. Rodzik requested and received from Defendants a complete copy of her personnel file pursuant to 26 M.R.S. § 631. The documentation contained within Ms. Rodzik's personnel file did not mention or otherwise reference any discipline or concerns about her job performance.

59. Ultimately, Defendants received notice of Ms. Rodzik's accommodation request and provided to her all necessary forms to be completed such that her request could be reviewed and considered under the ADA and Defendants' own internal policies, but then terminated Ms. Rodzik without cause and "outside of policy" within the 13-day window of time in which she was asked to complete and return the requisite ADA forms.

## COUNT I
### UNLAWFUL DISCRIMINATION UNDER THE ADA

60. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein

61. Each Defendant, individually, is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

62. Defendants, collectively, acted as an integrated enterprise and/or were a joint-employer of Ms. Rodzik.

63. Ms. Rodzik was, at all relevant times, an "employee" within the meaning of 42 U.S.C. § 12111(4).

11

64. At all relevant times, Ms. Rodzik was "disabled" within the meaning of the ADA; that is, Ms. Rodzik suffered from POTS, a physical impairment that substantially limited her major life activities, including but not limited to walking, standing, performing certain manual tasks, and climbing stairs.

65. At all relevant times, Ms. Rodzik was also "regarded as" having a disability within the meaning of 42 U.S.C. § 12102(1)(C).

66. At all relevant times, Ms. Rodzik was a "Qualified Individual" within the meaning of 42 U.S.C. § 12111(8), because Ms. Rodzik, with or without reasonable accommodation, was able to perform the essential functions of the position that she held.

67. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and, in fact, provided to her all necessary forms to be completed such that her accommodation request could be considered.

68. Rather than consider her request or engage in an interactive process with Ms. Rodzik, Defendants terminated her without cause only 11 days after Mr. Rodzik sought an accommodation.

69. Defendants' acts and omissions constitute unlawful discrimination against Ms. Rodzik in violation of the ADA.

70. Defendants acted with malice or with reckless indifference to the rights of Ms. Rodzik regarding her disability and request for reasonable accommodation.

71. As a direct and proximate result of Defendants' violations of Ms. Rodzik's rights under the ADA, Ms. Rodzik suffered substantial damages, including

but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

## COUNT II
### FAILURE TO ACCOMMODATE UNDER THE ADA

72. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

73. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and did not reasonably accommodate it.

74. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and her rights under the ADA, but chose to terminate her employment in lieu of reviewing or considering her accommodation request.

75. Defendants, individually and collectively, were aware or should have been aware of reasonable accommodations that could have been provided to Ms. Rodzik.

76. Defendants, individually and collectively, violated the ADA by failing to engage in an interactive process with Ms. Rodzik regarding her disability and request for an accommodation.

77. Defendants, individually and collectively, violated the ADA by failing to provide Ms. Rodzik with a reasonable accommodation for her disability.

78. Defendants acted with malice or with reckless indifference to the rights of Ms. Rodzik in regard to her disability and request for reasonable accommodation.

79. As a direct and proximate result of Defendants' violations of Ms. Rodzik's rights under the ADA, Ms. Rodzik suffered substantial damages, including

but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

## COUNT III
### RETALIATION AND INTERFERENCE UNDER THE ADA

80. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

81. During her employment with Defendants, Ms. Rodzik engaged in protected conduct under the ADA, including by, among other things, requesting a reasonable accommodation on or about March 20, 2023, discussing that request with Defendants, and being provided with appropriate forms by Defendants to have her request properly reviewed.

82. After Mr. Rodzik engaged in protected conduct, Defendants coerced, intimidated, threatened, and/or interfered with Ms. Rodzik's exercise or enjoyment of—or on account of her having exercised or enjoyed—her rights protected under the ADA, including by, among other things, declining to engage in a good-faith interactive process with Ms. Rodzik and failing to permit Ms. Rodzik to complete and submit all necessary forms in the required period of time.

83. After Mr. Rodzik engaged in protected conduct, she suffered an adverse employment action only 11 days later when Defendants terminated her employment.

84. Defendants' acts and omissions, including their individual and collective interference with Ms. Rodzik's exercise of her rights and their termination of Ms. Rodzik, were a direct and proximate result of Ms. Rodzik's act of seeking a reasonable

accommodation under the ADA and discussing this requested accommodation with Defendants.

85. In doing so, Defendants acted with malice or with reckless indifference to the rights of Ms. Rodzik.

86. As a result of Defendants' retaliation and interference, Ms. Rodzik suffered substantial damages, including but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

## COUNT IV
## UNLAWFUL DISCRIMINATION UNDER THE MHRA

87. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

88. At all relevant times, each Defendant, individually, was an "employer" within the meaning of 5 M.R.S. § 4553(4).

89. At all relevant times, Defendants, collectively, acted as an integrated enterprise and/or were a joint-employer of Ms. Rodzik.

90. At all relevant times, Ms. Rodzik was an "employee" within the meaning of 5 M.R.S. § 4553(3).

91. At all relevant times, Ms. Rodzik had a "disability" within the meaning of 5 M.R.S. § 4553-A; that is, Ms. Rodzik suffered from POTS, a physical impairment that substantially limited her major life activities and significantly impaired her physical and mental health.

92. At all relevant times, Ms. Rodzik was regarded as having a disability within the meaning of 5 M.R.S. § 4553-A(1)(D).

93. At all relevant times, Ms. Rodzik was a "Qualified individual with a disability" within the meaning of 5 M.R.S. § 4553(8-D).

94. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and provided to her all necessary forms to be completed such that her accommodation request could be considered by Defendants.

95. Rather than consider her request or engage in an interactive process with Ms. Rodzik, Defendants terminated her without cause only days after Mr. Rodzik sought an accommodation.

96. Defendants' acts and omissions constitute unlawful discrimination against Ms. Rodzik in violation of the MHRA.

97. Defendants acted with malice or with reckless indifference to the rights of Ms. Rodzik regarding her disability and request for reasonable accommodation.

98. As a direct and proximate result of Defendants' violations of Ms. Rodzik's rights under the MHRA, Ms. Rodzik suffered substantial damages, including but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

## COUNT V
### FAILURE TO ACCOMMODATE UNDER THE MHRA

99. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

100. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and did not reasonably accommodate it.

101. Defendants, individually and collectively, were aware of Ms. Rodzik's disability and her rights under the MHRA, but chose to terminate her employment in lieu of reviewing or considering her accommodation request.

102. Defendants, individually and collectively, were aware, or should have been aware, of reasonable accommodations that could have been provided to Ms. Rodzik.

103. Defendants, individually and collectively, violated the MHRA by failing to engage in an interactive process with Ms. Rodzik regarding her disability and request for an accommodation.

104. Defendants, individually and collectively, violated the MHRA by failing to provide Ms. Rodzik with a reasonable accommodation for her disability.

105. Defendants, individually and collectively, intentionally violated the MHRA with malice or with reckless indifference to the rights of Ms. Rodzik in regard to her disability and request for reasonable accommodation.

106. As a direct and proximate result of Defendants' violations of Ms. Rodzik's rights under the ADA, Ms. Rodzik suffered substantial damages, including but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

## COUNT VI
### RETALIATION AND INTERFERENCE UNDER THE MHRA

107. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

108. During her employment with Defendants, Ms. Rodzik engaged in protected conduct under the MHRA, including by, among other things, requesting a reasonable accommodation on or about March 20, 2023, discussing that request with Defendants, and being provided with appropriate forms by Defendants to have her request properly reviewed.

109. After Mr. Rodzik engaged in protected conduct, Defendants coerced, intimidated, threatened, and/or interfered with Ms. Rodzik's exercise or enjoyment of—or on account of her having exercised or enjoyed—her rights protected under the MHRA, including by, among other things, declining to engage in a good faith interactive process with Ms. Rodzik and failing to permit Ms. Rodzik to complete and submit all necessary forms in the required period of time.

110. After Mr. Rodzik engaged in protected conduct, she suffered an adverse employment action only 11 days later when Defendants terminated her employment.

111. Defendants' acts and omissions, including their individual and collective interference with Ms. Rodzik's exercise of her rights and their termination of Ms. Rodzik, were a direct and proximate result of Ms. Rodzik's act of seeking a reasonable accommodation under the MHRA.

112. In doing so, Defendants acted with malice or with reckless indifference to the rights of Ms. Rodzik.

113. As a result of Defendants' interference and retaliation, Ms. Rodzik suffered substantial damages, including but not limited to the loss of her job, income, and benefits and other pecuniary and non-pecuniary damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Isabel M. Rodzik respectfully requests that the Court enter judgment in her favor granting Plaintiff relief as the Court may deem just, including, but not limited to:

a. Declare the conduct engaged in by Defendants to be in violations of Ms. Rodzik's rights;

b. Enjoin Defendants, their agents, successors, employees, and those acting in concert with Defendants from continuing to violate Ms. Rodzik's rights;

c. Order Defendants to reinstate Ms. Rodzik or, alternatively, to award front pay and benefits to her;

d. Award relief for back pay, benefits, and prejudgment interest;

e. Award compensatory damages in an amount to be determined at trial;

f. Award punitive damages in an amount to be determined at trial;

g. Award attorney's fees, including legal expenses, and costs;

h. Award economic damages to Ms. Rodzik for her lost benefits, including health insurance, and the accumulating medical expenses incurred to treat her disability;

i. Award prejudgment interest;

j. Permanently enjoin Defendants from engaging in any employment practices that discriminate on the basis of disability;

    k.  Require that Defendants place a document in Ms. Rodzik's personnel file which explains that Defendants failed to provide to her a reasonable accommodation and that Defendants unlawfully terminated her because of disability discrimination; and

    l.  Grant to Ms. Rodzik such other further relief that may be just and proper.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38 and D. Me. Local R. 38.

Dated at Portland, Maine this 18th day of March, 2025.

/s/ *Joseph M. Mavodones*
Joseph M. Mavodones ~ Bar No. 6454
*Attorney for Plaintiff Isabel M. Rodzik*

NORMAN, HANSON & DETROY, LLC
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
jmavodones@nhdlaw.com